SIMPSON et al. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. February 7, 1916. Rehearing
Denied March 6, 1916.)

No. 2608.

1. INDICTMENT AND INFORMATION ⊂⊃125—DUPLICITY—SERIES OF ACTS CON-
STITUTING SAME OFFENSE.
    Rev. St. § 5209 (Comp. St. 1913, § 9772), provides that every cashier, etc.,
of a national banking association, who without authority from the direc-
tors issues or puts forth any certificate of deposit with intent to injure
or defraud the association, shall be deemed guilty of a misdemeanor.
Held, that an indictment charging that defendant, without authority and
with intent to injure and defraud the bank of which he was cashier, did
issue and put forth a certain certificate of deposit was not duplicitous and
bad, since, when an offense may be committed in one or more of several
ways, or where a penal statute mentions several acts disjunctively and
prescribes that each shall constitute the same offense, an indictment may·
in a single count charge any or all of the acts conjunctively, or charge the
commission of the offense in any or all of the ways specified.
    [Ed. Note.—For other cases, see Indictment and Information, Cent. Dig.
§§ 334–400; Dec. Dig. ⊂⊃125.]

2. CRIMINAL LAW ⊂⊃182—FORMER JEOPARDY—DISCHARGE OF JURY WITHOUT
VERDICT.
    A prosecution on a defective indictment did not bar a subsequent prose-
cution, where there was no acquittal on the merits, but the court, upon the
defects being called to its attention, after the close of the testimony and
the arguments to the jury, discharged the jury.
    [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 330–332;
Dec. Dig. ⊂⊃182.]

3. INDICTMENT AND INFORMATION ⊂⊃133—OBJECTIONS—MANNER OF TAKING
OBJECTIONS.
    Orderly procedure requires that objections to an indictment should
be made either by motion to quash, by demurrer, or by motion in arrest
of judgment, and the practice of permitting such objections to be urged
during the trial by objections to the testimony, or by requests for in-
structions, is not to be commended, and should not be encouraged.
    [Ed. Note.—For other cases, see Indictment and Information, Cent.
Dig. §§ 454–468; Dec. Dig. ⊂⊃133.]

4. CRIMINAL LAW ⊂⊃113—VENUE—OFFENSES COMMITTED PARTLY IN DIFFER-
ENT DISTRICTS.
    Judicial Code (Act March 3, 1911, c. 231) § 42, 36 Stat. 1100 (Comp. St.
1913, § 1024), provides that, when any offense against the United States
is begun in one judicial district and completed in another, it shall be
deemed to have been committed in either, and may be dealt with, tried,
and punished in either district as if it had been actually and wholly com-
mitted therein. Held that, where a certificate of deposit was signed in
blank by the cashier of a bank in Idaho, and was filled in by another
party in Mississippi, and negotiated in Kentucky, a prosecution for issuing
and putting forth such certificate with intent to injure and defraud the
bank, and for aiding and abetting the cashier to so issue and put it forth,
was maintainable in Idaho.
    [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 190, 232;
Dec. Dig. ⊂⊃113.]

5. BANKS AND BANKING ⊂⊃256—CRIMINAL OFFENSES—DEFENSES.
    Where a certificate of deposit was issued by the cashier of a national
bank without authority from the directors and with intent to injure and

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

defraud the bank, in violation of Rev. St. § 5209 (Comp. St. 1913, § 9772), the criminal act was then complete, and the subsequent ratification of its issuance by the directors could not change the character of the acts.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 958–964, 967; Dec. Dig. 256.]

6. BANKS AND BANKING 257—CRIMINAL PROSECUTIONS—INSTRUCTIONS.

In a criminal prosecution in which the cashier of a national bank was charged with unlawfully issuing and putting forth a certificate of deposit with intent to injure and defraud the bank and without authority from the directors, and another party was charged with aiding and abetting him, evidence was rejected that the cashier executed a deed to his home to secure one of the directors, who advanced money to take up the certificate. The court charged that, when the certificate was sent to another bank at C. and presented for payment, some arrangement was made by which defendants, or one of them, took care of it and protected the bank against loss; that the charge was not that the bank was injured or defrauded, but that the certificate was issued with the intention to injure or defraud; that defendants were not relieved or acquitted because they took care that the bank did not suffer loss; that evidence of this fact of payment would not have been received, except for the contention that the money realized by the use of the certificate got into defendants' private accounts as a result of a misunderstanding between them, and that the mistake was not discovered until some time later; that if defendants had immediately repaired the wrong, before others had knowledge of the existence of the certificate, the jury might very properly conclude that the restoration to the bank of the value of the certificate tended to corroborate their contention of innocent mistake; that whether the jury would give such significance to the restoration at the later date, when the certificate had come to C. and its existence was known, he left to the jury to say; that, except for such light as the payment threw upon the question whether the certificate was intended to be used for defendants' personal benefit, or whether such benefit was the result of inadvertence and misunderstanding, the payment was without significance. *Held*, that this gave defendants the full benefit of any inference that might be drawn from the fact that the certificate was taken up and paid by them.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 965, 966, 970–976; Dec. Dig. 257.]

In Error to the District Court of the United States for the Southern Division of the District of Idaho; Frank S. Dietrich, Judge.

W. G. Simpson and another were convicted of offenses, and they bring error. Affirmed.

Jas. H. Hawley, of Boise, Idaho, William H. Atwell, of Dallas, Tex., W. A. Stone, of Caldwell, Idaho, and C. H. Lingenfelter, of Boise, Idaho, for plaintiffs in error.

J. L. McClear, U. S. Atty., and J. R. Smead, Asst. U. S. Atty., both of Boise, Idaho.

Before GILBERT and ROSS, Circuit Judges, and RUDKIN, District Judge.

RUDKIN, District Judge. Section 5209 of the Revised Statutes of the United States relating to national banking associations provides as follows:

"Every president, director, cashier, teller, clerk, or agent of any association, who embezzles, abstracts, or willfully misapplies any of the moneys, funds, or credits, of the association; or who, without authority from the directors, is-

sues or puts in circulation any of the notes of the association; or who, without such authority, issues or puts forth any certificate of deposit, draws any order or bill of exchange, makes any acceptance, assigns any note, bond, draft, bill of exchange, mortgage, judgment, or decree; or who makes any false entry in any book, report, or statement of the association, with intent, in either case, to injure or defraud the association or any other company, body politic or corporate, or any individual person, or to deceive any officer of the association, or any agent appointed to examine the affairs of any such association; and every person who with like intent aids or abets any officer, clerk, or agent in any violation of this section, shall be deemed guilty of a misdemeanor, and shall be imprisoned not less than five years nor more than ten."

The indictment in this case charges that on the 27th day of March, 1913, at Caldwell, in the county of Canyon and state of Idaho, one S. D. Simpson, cashier of a national banking association known as the American National Bank of Caldwell, did willfully, unlawfully, and feloniously, without authority from the directors of said association, and with intent to injure and defraud said association, issue and put forth a certain certificate of deposit drawn upon said association in the sum of $2,500, therein and thereby certifying that there had been deposited by one W. G. Simpson in and with said association the sum of $2,500, whereas in truth and in fact the said W. G. Simpson, to whom said certificate of deposit was so issued and put forth, did not have at the time said certificate of deposit was so issued and put forth, on deposit with said association an amount of money equal to the amount then and there specified in such certificate, or any amount or sum of money whatsoever, as he, the said W. G. Simpson, then and there well knew. It is then further charged that the said W. G. Simpson did, at the time and place aforesaid, unlawfully and feloniously and with the intent to injure and defraud the said association, and without authority from the directors, aid, abet, incite, counsel, and procure the said S. D. Simpson as such cashier to willfully, unlawfully, and feloniously, and with the intent aforesaid issue and put forth the said certificate of deposit in manner and form aforesaid, he, the said W. G. Simpson, then and there well knowing that he did not have the said sum of $2,500 or any other sum on deposit with said association.

On the trial of the action the jury returned a verdict of guilty as to both defendants, and to reverse a judgment entered upon that verdict the present writ of error was sued out. The record contains 31 assignments of error in all; but many of these present the same questions in different forms, and we will now take up such of the assignments as we deem worthy of consideration in the order in which the rulings occurred at the trial, rather than in the order in which the assignments appear in the record.

[1] 1. The overruling of a demurrer and motion to quash is assigned as error. It will be observed that the indictment charges that the certificate of deposit was issued *and* put forth with intent to injure *and* defraud the association. For this reason it is urged the indictment is duplicitous and bad. There is no merit in this assignment.

"It is a well-settled rule of criminal pleading that, when an offense against a criminal statute may be committed in one or more of several ways, the in-

dictment may, in a single count, charge its commission in any or all of the ways specified in the statute. So where a penal statute mentions several acts disjunctively, and prescribes that each shall constitute the same offense and be subject to the same punishment, an indictment may charge any or all of such acts conjunctively as constituting a single offense. Or, as the same rule is frequently stated, where a statute makes either of two or more distinct acts, connected with the same general offense and subject to the same measure and kind of punishment, indictable separately and as distinct crimes when each shall have been committed by different persons and at different times, they may, when committed by the same person and at the same time, be coupled in one count as together constituting but one offense; and this is true, although a disjunctive particle is not employed in the statute, but a conjunction is used which is disjunctive in sense." 22 Cyc. 380.

Again:

"In the case of substantive acts which are made unlawful when done from particular motives or with particular intents, it is not duplicity to charge the single substantive act in combination with more than one of the expletives which give it character." Id. 382.

The rule thus stated is amply supported by the authorities cited. Thus in United States v. Fero (D. C.) 18 Fed. 901, the statute provided that:

"Every person who shall receive any money or other valuable thing under a threat of informing, *or* as a consideration for not informing, against any violation of any internal revenue law, shall, on conviction thereof, be punished," etc.

And it was held that an information charging that the defendant received a certain sum of money under a threat of informing, *and* as a consideration for not informing, was not duplicitous. See, also, Tiberg v. Warren, 192 Fed. 458, 112 C. C. A. 596; Ackley v. United States, 200 Fed. 217, 118 C. C. A. 403.

[2] 2. The overruling of a plea of once in jeopardy, or the directing of a verdict in favor of the government on that issue, is assigned as error. The plea of former jeopardy was based on the following facts: A previous indictment had been returned against the defendants charging the same crime, but omitting to charge that the certificate of deposit was issued and put forth "without authority from the directors." A plea of not guilty was interposed to that indictment, and the case came on regularly for trial. After the close of the testimony and the arguments to the jury, one of the counsel for the defendants suggested to the court that the indictment was bad because it omitted the clause in question. The court thereupon, of its own motion, over the objection and protest of the defendants, discharged the jury and remanded the defendants to abide the action of another grand jury.

"In England, an acquittal upon an indictment so defective that, if it had been objected to at the trial, or by motion in arrest of judgment, or by writ of error, it would not have supported any conviction or sentence, has generally been considered as insufficient to support a plea of former acquittal. 2 Hale. P. C. 248, 394; 2 Hawk. P. C. c. 35, § 8; 1 Stark. Crim. Pl. (2d Ed.) 320; 1 Chit. Crim. Law, 458; Archb. Crim. Pl. & Ev. (19th Ed.) 143; 1 Russell on Crimes (6th Ed.) 48. And the general tendency of opinion in this country has been to the same effect. 3 Greenl. Ev. § 35; 1 Bishop's Crim. Law, § 1021, and cases there cited." United States v. Ball, 163 U. S. 662, 666, 16 Sup. Ct. 1192, 41 L. Ed. 300.

Many of the states have provided by statute that an acquittal on the merits may be pleaded in bar of a subsequent prosecution, notwithstanding defects in the form or substance of the indictment. This statutory rule is in substance the one adopted by the Supreme Court of the United States in the Ball Case. At page 669 of 163 U. S., at page 1194 of 16 Sup. Ct. (41 L. Ed. 300), the court said:

"The American decisions in which the English doctrine has been followed have been based upon the English authorities, with nothing added by way of reasoning. After the full consideration which the importance of the question demands, that doctrine appears to us to be unsatisfactory in the grounds on which it proceeds, as well as unjust in its operation upon those accused of crime; and the question being now for the first time presented to this court, we are unable to resist the conclusion that a general verdict of acquittal upon the issue of not guilty to an indictment undertaking to charge murder, and not objected to before the verdict as insufficient in that respect, is a bar to a second indictment for the same killing."

Had there been an acquittal on the merits at the first trial this case would fall directly within the decision of the Ball Case. But here there was no acquittal on the merits. The attention of the trial court was challenged to the sufficiency of the indictment before the jury retired to consider of their verdict, and this challenge was sustained thus preventing the submission of the case to the jury at all. Neither under the decision of the Supreme Court, nor under any other authority that has been called to our attention, will a prosecution on a defective indictment, without an acquittal on the merits, bar a subsequent prosecution. United States v. Rogoff (C. C.) 163 Fed. 311.

[3] Orderly procedure requires that objections to an indictment should be made either by motion to quash, by demurrer, or by motion in arrest of judgment, and the practice of permitting such objections to be urged during the trial by objections to testimony, or by requests for instructions, is not to be commended and should not be encouraged. But in this case the first indictment was clearly defective; there has been no acquittal on the merits, and therefore the former proceeding is no bar to the present prosecution.

[4] 3. The charge of the court on the question of venue is assigned as error. It appears from the uncontradicted testimony that the certificate of deposit in question was signed in blank by the cashier of the bank in the District of Idaho, was filled in by the other plaintiff in error in the state of Mississippi, and was negotiated in the state of Kentucky. Under these facts the plaintiffs in error contend that the certificate was not such when it left the district of Idaho, and that therefore the crime, if any, was committed without the jurisdiction of the Idaho court. True, a certificate of deposit signed in blank is no certificate; but it is equally true that a certificate filled in, but without the signature of the proper officer of the bank, is no certificate. The one is as essential to the validity and existence of the certificate as the other. The case, therefore, clearly falls within section 42 of the Judicial Code, which provides that:

"When any offense against the United States is begun in one judicial district and completed in another, it shall be deemed to have been committed in either, and may be dealt with, inquired of, tried, determined, and punished in

either district, in the same manner as if it had been actually and wholly committed therein."

There was no error in the charge of the court or in the refusal to charge as requested in this respect.

[5] 4. Testimony was offered tending to show that the issuance of the certificate of deposit was ratified by the directors of the bank as soon as they received notice of its existence, and the refusal of the court to admit this testimony, or to charge the jury that such ratification would constitute a defense, is assigned as error. It is a little difficult to understand upon what theory this offer and request were made. The criminal act was complete when the certificate of deposit was issued without authority from the directors, and with intent to injure and defraud the association, and no act of the directors could change its character. The doctrine of ratification has but little application to the criminal law. It certainly has no application here.

[6] 5. Testimony was also offered tending to show that the plaintiff in error S. D. Simpson executed a warranty deed of his home to secure one of the directors who advanced the money to take up the certificate in question. The rejection of this testimony is assigned as error. Upon that question the court instructed the jury as follows:

"When the certificate of deposit was sent to another bank at Caldwell for collection, and was presented for payment, some arrangement was made by which the defendants, or one of them, took care of it and protected the bank against loss. Such is the testimony on behalf of one or both of the defendants. And you will bear in mind that the charge here is not that the American National Bank was injured or defrauded, but that the certificate was issued with the intention to injure or defraud. And the defendants are not to be relieved or acquitted merely because they took care that the bank did not ultimately suffer loss. The question is not whether the bank was actually defrauded or not. The question is whether the certificate was issued with that intention. Evidence of this fact of payment would not have been received but for one consideration, and that is the contention of the defendants that the money which was realized by using the certificate as collateral in Kentucky got into the private accounts of the defendants as a result of a misunderstanding between them, and that the mistake was not discovered until W. G. Simpson came to Idaho about the middle of August. If, to illustrate my meaning, the defendants had immediately repaired the wrong, before others had knowledge of the existence of the certificate, you might very properly conclude that the restoration to the bank of the value of the certificate at that time tended to corroborate their contention of innocent mistake. Whether you will give such significance to the restoration at the later date, when the certificate had come to Caldwell and its existence was known, or must have become known, and under all the circumstances of the case, I leave it to you to say. Except for such, light, if any, as you may conclude it (that is, the payment) throws upon this question (that is, the question whether the certificate was intended to be used for the personal benefit of the defendants, or whether such benefit was the result of inadvertence and misunderstanding), the restoration or payment is without significance."

It will thus be seen that the court gave to the plaintiffs in error the full benefit of any inference that might be drawn from the fact that the certificate of deposit was taken up and paid by them.

This covers the principal assignments of error, and the only ones discussed at the argument. The other assignments are mainly amplifications of those already considered, and call for no further dis-

229 F.—60

cussion on our part. The charge of the court was full and fair and free from error, and the evidence legally sufficient to sustain the conviction.

The judgment is therefore affirmed.