Alfredo Delgado ARELLANES and Geneva Arellanes, Appellants,

v.

UNITED STATES of America, Appellee.

No. 17527.

United States Court of Appeals Ninth Circuit.

April 23, 1962.

Sol S. Judson, Pittsburg, Cal., for appellant; Henry Muller, Oakland, Cal., of counsel.

Cecil F. Poole, U. S. Atty., Laurence E. Dayton and Jerrold Ladar, Asst. U. S. Attys., San Francisco, Cal., for appellee.

Before ORR, HAMLIN and MERRILL, Circuit Judges.

ORR, Circuit Judge.

Appellants, husband and wife, stand convicted of violations of 21 U.S.C.A. §§ 174 & 176a. They claim that their convictions should be reversed because: 1) the evidence is insufficient to support the verdicts; 2) they were denied the full assistance of counsel which the Constitution and laws of the United States guarantee them; and 3) the court incorrectly and inadequately instructed the jury.

We conclude that insofar as Mrs. Arellanes is concerned the evidence is insufficient. That conclusion does not extend to Mr. Arellanes. We recite the facts.[1]

In the latter part of February, 1961, Mr. Arellanes rented a flat at 1039 Page Street, San Francisco. He and his wife left the area almost immediately, returning about two weeks later, at which time they spent several days at the flat before again departing. During their stay at the flat they received from the landlady a rent receipt and an extra key. Sometime prior to March 13, this extra key was given to one John O'Rourke, a man whose acquaintance Mr. Arellanes had made during a confinement at San Quentin on a California narcotics conviction.

Prior to the Arellanes' return from their second trip, narcotics agents arrested the said O'Rourke. He undertook to cooperate with the agents and led them to the Page Street flat to "surrender some narcotics." The heroin and marijuana discovered there on March 13, 1961, in a dresser drawer in the bedroom was the subject matter of two counts of the charge against the Arellanes.

O'Rourke then told the agents that he was expecting another quantity of narcotics to arrive from Los Angeles in the next few days and that these would be in the door panel or under the seat of the auto in which they were being carried. On the morning of March 17, 1961, an auto driven by Mr. Arellanes appeared in front of the Page Street flat. With Mr. Arellanes were his wife, their young infant, and one Mrs. Dolores Benton, whom the Arellanes had picked up a short time before as they passed through the Mission District of San Francisco. The narcotics agents promptly arrested the Arellanes and Mrs. Benton and made a search of the car. The search turned up approximately forty pounds of marijuana behind and beneath the rear seat, and a quantity of heroin in a shaving kit on top of the Arellanes' personal effects on the back seat. These drugs were the subject matter of the other two counts of the charge against the Arellanes.

Subsequent to the arrest, one of the narcotics agents sought the cooperation of Mr. Arellanes in tracking down other persons associated with the narcotics traffic. Mr. Arellanes said he might help, but would have to go to Los Angeles and Mexico to do so. When the agent indicated that this would be impossible, the discussion was terminated, but not until Mr. Arellanes had allegedly named his "source" of narcotics. Mr. Arellanes denied the whole conversation. At about the same time, Mrs. Arellanes was reported to have said to Mrs. Benton something to the effect that "I'll bet you

---

1. The statement of facts is based upon the evidence viewed in the light most favorable to the government, which had judgment in the trial court. See Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1941) and Cellino v. United States, 276 F.2d 941 (9th Cir. 1960).

didn't know you were sitting on fifty pounds of weed."

On the basis of this evidence, Mr. Arellanes was convicted on all four counts, and Mrs. Arellanes was convicted on the counts related to the drugs found in the car, but was acquitted on those respecting the drugs discovered in the flat. After preliminary investigation, Mrs. Benton had been discharged from custody and was not prosecuted.

In its prosecution of this case, the government relied exclusively upon the statutory inference of knowledge of illegal importation which the jury is permitted to draw whenever it is shown that a defendant has or has had possession of narcotic drugs, and does not explain that possession to the satisfaction of the jury.[2]

■■ This court has on many occasions passed upon the meaning of the word "possession" as used in 21 U.S.C.A. §§ 174 & 176a. The meaning as defined in the cases is a "dominion and control * * * so as to give power of disposal" of the drug. Rodella v. United States, 286 F.2d 306, 311, 312 (9th Cir. 1960). Thus, an ability to produce the drug, even through the use of agents, will permit an inference of possession by the principal. Hernandez v. United States, 300 F.2d 114 (9th Cir. 2/9/62, No. 17482). Such possession can thus be constructive and need not be exclusive, but may be joint. Gallegos v. United States, 237 F.2d 694, 697–698 (10th Cir. 1956). Proof of exclusive control or dominion over property on which contraband narcotics are found is a strong circumstance tending to prove knowledge of the presence of such narcotics and control thereof. Evans v. United States, 257 F.2d 121 (9th Cir.) cert. denied, 358 U.S. 866, 79 S.Ct. 98, 3 L.Ed.2d 99 (1958); People v. Antista, 129 Cal.App. 2d 47, 276 P.2d 177 (1954). On the other hand, mere proximity to the drug,[3] mere presence on the property where it is located,[4] or mere association, without more, with the person who does control the drug or the property on which it is found,[5] is insufficient to support a finding of possession. Applying these criteria to the instant case, we find that Mrs. Arellanes' connection with the drugs is not shown to go beyond the enumerated insufficiencies.

■ The evidence, viewed most strongly for the government, establishes: 1) that Geneva Arellanes is married to Alfredo Arellanes; 2) that she stayed with him for a time at the apartment where narcotics were subsequently found; 3) that she accompanied her husband on the trip and was with him in the car in which other narcotics were found; 4) that she made an idle reference to the narcotics in a remark to Mrs. Benton subsequent to the arrest and search and after a disclosure of marijuana in the car had been made to everyone present. On the basis of this, the government states that, "Where the narcotics were, there also was Geneva Arellanes." We cannot view this as a conclusively incriminating circumstance because the presence of the narcotics is also exactly coincidental with the presence of her husband, and Mrs. Arellanes' presence with both is as fully explained by her attachment to her husband as it might be by a control over the drugs. These facts might indeed be said to establish that part of the charge related to facilitation of transportation, but they cannot show the *possession* or *control* which the government must establish to

---

2. "Whenever on trial for a violation of this section the defendant is shown to have or to have had [possession of the forbidden drug] such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

3. Williams v. United States, 290 F.2d 451 (9th Cir. 1961).

4. United States v. Landry, 257 F.2d 425, 431 (7th Cir. 1958; Guevara v. United States, 242 F.2d 745, 747 (5th Cir. 1957).

5. United States v. Mills, 293 F.2d 609, 611 (3rd Cir. 1961); Evans v. United States, supra; United States v. Hernandez, 290 F.2d 86, 90 (2nd Cir. 1960).

raise the presumption of guilty knowledge. There was, we point out, no showing here of the elements of joint venture, as in Eason v. United States, 281 F.2d 818, 821 (9th Cir. 1960).

The equivocal position of Mrs. Arellanes with respect to control over the drugs is to be contrasted with what the evidence shows to be the position of her husband. In every instance in the record where reference is made to the control and direction of the auto, Mr. Arellanes is shown to have had that direction and control. According to his own testimony, *he* loaned out the car for a fairly extended period *on his own authority while he and his family were in Los Angeles.* During that period *he* rented and operated another car. During the trip from Los Angeles to San Francisco *he* operated the vehicle and was in control of it when it appeared at the Page Street flat. Thus, Mr. Arellanes is shown to have been in exclusive control and dominion of the vehicle throughout the relevant period. This factor, as we have had occasion to say before, "is a potent circumstance tending to prove knowledge of the presence of [the] narcotics, and control thereof." Evans v. United States, 257 F.2d 121, 128 (9th Cir.), cert. denied, 358 U.S. 866, 79 S.Ct. 98, 3 L.Ed.2d 99 (1958).

■ Inasmuch as we have concluded that there is sufficient evidence upon which to base a finding of possession by Mr. Arellanes of the drugs in the auto, it is unnecessary to further review the evidence on the possession of the drugs found in the flat because appellant received concurrent sentences. See Lawn v. United States, 355 U.S. 339, 359, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958), Hirabayashi v. United States, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774 (1929). However, other points remain.

Appellant contends that O'Rourke, who was incarcerated at the time of trial, should have been called to testify by the government. Certain statements alleged to have been made by O'Rourke were brought out during appellant's cross-examination of the narcotics agents, and government counsel referred to them in his argument to the jury. Appellant argues, first, that the statements were all hearsay and thus should have been excluded. Appellant also urges that the government's failure to call O'Rourke raises strong inferences against its case. In what respect this prejudices appellant is not made clear.

■ On the hearsay aspect, McAdams v. United States, 74 F.2d 37 (8th Cir. 1934), cited by appellant, is not in point. That case merely holds that the government cannot itself elicit hearsay testimony over the timely objection of a party. Here, quite to the contrary, appellant himself elicited the questioned testimony. He now claims ignorance of the rules of evidence and says that the trial court should have intervened on its own motion to protect him from this "folly." The record makes clear, however, that far from being "folly," this testimony was sought as a part of a calculated design of appellant to weaken the government's case by attempting to show that it rested not on the government's own knowledge or investigation, but on the trumped-up story of an interested and unreliable informer. This was the full thrust of appellant's quite able argument to the jury. It has never been held that hearsay evidence is utterly worthless, only that on balancing reliability against possible prejudice it ought to be excluded on motion of the party against whom it is offered. Here, appellant took his chances by asking the questions and commenting on the answers.

■ We similarly cannot find an obligation on the part of the government to call O'Rourke to the stand. The problem of the "faceless informer" has recently been before this court in relation to the establishment of probable cause for arrest, search and seizure without a warrant, Costello v. United States, 298 F.2d 99 (9th Cir. 1962), and before the Supreme Court of the United States in relation to the need by a defendant for the identity of and access to a key government witness. Roviaro v. United States, 353 U.S. 53, 62, 63, 77 S.Ct. 623,

1 L.Ed.2d 639 (1957). But this is not the case of a key informant whose identity is sought to be established. Here, the identity of the witness was known to defendant from the outset. Since he was readily subject to legal process by defendant as well as the government, no inference can be drawn from the government's failure to call him. United States v. Brown, 236 F.2d 403 (2d Cir. 1956). See also Billeci v. United States, 87 U.S. App.D.C. 274, 184 F.2d 394 (1950) and Rostello v. United States, 36 F.2d 899 (7th Cir. 1929). Nor is this a case where the missing witness was a government agent who set out to "make" a case from scratch and who was in that way a principal to the very transaction upon which the charge was based, as in Morei v. United States, 127 F.2d 827 (6th Cir. 1942)

█ Appellant alleges prejudice by the District Attorney in his summation to the jury. The challenged statements are set forth in the footnote.[6] We find no prejudice. The argument comes with-

in permissible deductions from the testimony and reasonable comment on the facts and circumstances, and within the latitude which must be permitted in argument. See Orebo v. United States, 293 F.2d·747 (9th Cir. 1961), Henderson v. United States, 218 F.2d 14 (6th Cir.), cert. denied, 349 U.S. 920, 75 S.Ct. 660, 99 L.Ed. 1253 (1955) and United States v. Battiato, 204 F.2d 717 (7th Cir. 1953).

█ The adequacy of the court's instructions to the jury is challenged. The first objection is directed toward the instruction which admonished the jury to consider separately the case and evidence against each defendant. It is said that this instruction [7] was not sufficiently explicit, particularly as it related to Geneva Arellanes. We consider the objection only insofar as it applies to Mr. Arellanes and find it without merit. The instruction on the meaning of "possession" is also assailed, but it is taken from a model instruction on the subject which has been approved, and clearly states the law.[8]

6. "So, merely because he has been convicted not once, but twice, of a felony is a reason why you can disregard the testimony of Mr. Arellanes * * *."
"* * * when O'Rourke is caught he says, 'My source is coming up here, it's Arellanes, he is going to be driving up. * * *."
"* * * if you have ever seen a man fight it is this defendant Arellanes. * * *"
"When a convicted narcotics peddler or user is found in a car full of narcotics, isn't that usually just enough without anything else? * * *."
"Well, ladies and gentlemen, these are dedicated men, these narcotics agents * * *. They are in the business of hunting down narcotics because it's rotten and they are in it because they are dedicated men and they are trying to catch narcotics peddlers, and they have caught two right here * * *."

7. "As you have noted here, a separate crime or offense is charged against each of the defendants in each count of this indictment. Each offense, the evidence applicable thereto, should be considered separately. The fact that you may find that both or one of the accused guilty or not guilty of one of the offenses charged should not control your verdict with re-

spect to any other offense charged. Each offense and the evidence applicable thereto must be considered separately by you, and that is true as to each defendant, must be considered separately by you and the evidence that has been admitted as to each defendant considered only as to that defendant alone and not in any other manner and not jointly."

8. "The law recognizes two kinds of possession; actual possession and constructive possession. A person who knowingly has direct physical control over a thing at a given time is then in actual possession of it. A person who although not in actual possession, knowingly has the power and the intention at a given time to exercise dominion or control over a thing is then in constructive possession. The law recognizes also that possession may be sole or joint. If one person alone has actual or constructive possession of a thing, possession is sole. If two or more persons share actual or constructive possession of a thing, their possession is joint. If you find from the evidence beyond a reasonable doubt that the accused, either alone or jointly with others, had actual or constructive possession of the heroin or the marijuana described in this indictment, then you may find that such heroin and such marijuana were in the

Another instruction complained of had to do with the possibility of the jury finding defendant guilty if they found that he had "either concealed or facilitated the concealment or transportation" of the drugs—stated in the alternative—whereas the indictment charged these elements in the conjunctive. Although the practice is based upon reasoning which is obscure with age, it is still proper to charge conjunctively the elements of a crime which is denounced disjunctively in the statute, and a finding of any one of the said elements will support a verdict of guilty. Simpson v. United States, 229 F. 940, 942 (9th Cir.), cert. denied, 241 U.S. 668, 36 S.Ct. 552, 60 L.Ed. 1229 (1916) (Bank Act); O'Neill v. United States, 19 F.2d 322 (8th Cir. 1927) (Harrison Narcotics Act); Troutman v. United States, 100 F.2d 628, 631 (10th Cir. 1938) (Securities Act); Price v. United States, 150 F.2d 283, 285 (5th Cir. 1945) (Liquor Tax Act). It is claimed the trial court did not sufficiently refer to the element of scienter required for conviction. While it is true that in the paragraph to which attention is directed, the word "knowingly" does not appear, it was stressed by the trial court no fewer than five times in the preceding five paragraphs, in connection with this same instruction. The instructions are to be read as a whole.

We next consider whether the denial of a request for a continuance amounted to an abuse of discretion by the trial court. Appellant was indicted on March 22, 1961. On March 29th, he appeared with counsel for arraignment and pleaded not guilty. The case was then set for trial for April 17th. On April 17th it was continued, on appellant's request, to May 1st. On May 1st it was continued by stipulation to May 15th. On the morning of May 15th, counsel for appellant reported that a difference had developed between himself and his clients as to the conduct of the case and requested a further continuance. Either this was denied or no action was taken on it. In any event, that same afternoon the motion was renewed before another judge who eventually tried the case. The judge granted a twenty-four hour continuance in which the difference between client and counsel might be resolved or new counsel might be retained. The next day, the controversy not having been settled, counsel moved to be relieved of further appearance in the case and for a further continuance for his client. In the meantime, a jury had been empanelled. The trial judge put the case over for an additional twenty-four hours.

On the morning of May 17th counsel for appellant reported that their differences were still unresolved and renewed his motions to be relieved from further appearance and for a continuance. After an extended colloquy[9] counsel was permitted to withdraw, and appellant proceeded without counsel. Appellant argues that the denial of a further continuance at this stage was an abuse of discretion in that it forced him to go to trial without counsel and unprepared and thus deprived him involuntarily of his right to counsel.

possession of the accused within the meaning of the word 'possession' as used in these instructions." See Form 55, 20 F.R.D. 278 and compare Johnson v. United States, 270 F.2d 721 (9th Cir.), cert. denied, 362 U.S. 937, 80 S.Ct. 759, 4 L.Ed.2d 751 (1960) with Erwing v. United States, 296 F.2d 320 (9th Cir. 1961).

9. "THE COURT: Mr. Arellanes, is it your desire that I excuse Mr. Sugarman entirely? Is that correct?
THE DEFENDANT ALFREDO ARELLANES: Yes.

THE COURT: You don't want to have any consultation with him whatsoever?
THE DEFENDANT ALFREDO ARELLANES: No * * *. Even if he were to remain in any capacity, because we had the understanding we thought we were going to get a continuance, there are so many things I haven't told him, there isn't time, no matter who I would ask, ask thirty lawyers, and I couldn't tell them what I would want to tell them about our defense."

Courts are jealous of the right of a defendant to be represented by counsel, but a defendant can waive this right and should not be heard to complain when he knowingly and designedly does so. Situations such as these present a grave problem to a trial court. Criminal trials are expected to be disposed of expeditiously. Efforts are made by the courts to accomplish this end. A defendant comes into court represented by counsel—continuances are asked for and granted. Finally, a trial date is set —a jury is summoned. Then a further continuance is asked. The court properly decides that the motion is without merit and denies the request. The empanelling of a jury is proceeded with and the jury is selected—then the defendant resorts to the tactic of discharging his attorney and again asks for time in which to get another. There must be a limit to the waste of time and expense to which a court must submit by reason of a defendant coming into court and by whim and caprice discharging his attorney and causing the trial to be postponed. Appellant here was represented by counsel for almost seven weeks prior to trial. The facts in this respect are very similar to the case of Torres v. United States, 270 F.2d 252 (9th Cir.), cert. denied, 362 U.S. 921, 80 S.Ct. 675, 4 L.Ed.2d 741 (1960), recently decided by this court. Under the circumstances the trial court proceeded properly. It could not force the services of an attorney upon appellant against his expressed wishes. See Adams v. United States, ex rel. McCann, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942). The defendant in this case is intelligent. He handled his defense quite well.

An information charging defendant with being a second-offender was filed and defendant was asked whether he was the person named in the information, to which he replied that he was. Appellant claims that this was a new charge and that he should have then been given an opportunity to employ counsel. The filing of these informations makes possible a greater punishment. The procedure is a simple one, in which the information is filed and the defendant is called upon in open court to affirm or deny his identity with that of the person previously convicted. See 26 U.S.C.A. § 7237(c).

The circumstances here did not require further direct intervention by the court with respect to the assistance of counsel. After the verdict was returned, motions for new trial and judgment notwithstanding the verdict were made and appellant requested a continuance for the purpose of consulting counsel and preparing for the presentation of these motions, and the taking of an appeal. A week's continuance was granted. At the postponed time appellant appeared and in the meantime had consulted counsel. Nevertheless, he moved for a further continuance solely for the purpose of further preparing the presentation of the motions. The court denied this motion together with others appellant made, and proceeded to pronounce judgment.

While appellant had the same right to counsel in these later proceedings as at all stages, Gadsden v. United States, 223 F.2d 627, 630, 96 U.S.App.D.C. 162, (1955), it would constitute an excessive burden to require the trial court to intervene at each potentially separable stage of trial to conduct an inquiry respecting a party's continuing wishes with respect to counsel, Davis v. United States, 230 F.2d 869 (5th Cir.), cert. denied, 351 U.S. 986, 76 S.Ct. 1055, 100 L.Ed. 1500 (1956), when, as here, appellant's continuing state of mind respecting his original waiver is clear. This is not a case where the situation with reference to the representation has changed between trial and sentencing as in Gadsden. Nor is it a situation where the filing of the second-offender information gives rise to a full-scale trial of complex issues, as in some state habitual criminal practice revealed in Chandler v. Fretag, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4 (1954), Chewning v. Cunningham, 368 U.S. 443, 82 S.Ct. 498, 7 L.Ed.2d 442 (1962), and Oyler v. Boles, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962). Here, on the

611

contrary, the sole issue is that of the identity of the defendant, a narrower inquiry than under the earlier practice. United States v. Scales, 249 F.2d 368 (7th Cir.), cert. denied, 356 U.S. 945, 78 S.Ct. 792, 2 L.Ed.2d 820 (1958); United States v. Kapsalis, 214 F.2d 677 (7th Cir.), cert. denied, 349 U.S. 906, 75 S.Ct. 583, 99 L.Ed. 1242 (1955). And the class of convictions which is permitted to be shown is very narrow. In any event, whether he was the same person named in the information was a fact peculiarly within the knowledge of defendant. Counsel could not have helped him to determine this; hence, no prejudice resulted.

The judgment of conviction against Geneva Arellanes is reversed. The judgment of conviction against Alfredo Arellanes is affirmed.

Reversed in part and affirmed in part.