**UNITED STATES of America,
Appellee,**

v.

**Pedro Venegas AMARO, Appellant.**

**No. 24148.**

United States Court of Appeals,
Ninth Circuit.

Feb. 17, 1970.

Bernard T. Winsberg (argued), Los Angeles, Cal., for appellant.

Darrell W. MacIntyre (argued), Asst. U. S. Atty., Robert L. Brosio, Asst. U. S. Atty., Wm. M. Byrne, Jr., U. S. Atty., Los Angeles, Cal., for appellee.

Before MERRILL, WRIGHT and KILKENNY, Circuit Judges.

KILKENNY, Circuit Judge:

Appellant was convicted, after a jury trial, of five narcotic offenses in viola-

tion of 21 U.S.C. § 174. Three of the counts charged appellant with receiving, concealing and transporting heroin and two of the counts charged him with unlawful sale of the same narcotic. Two counts charging violation of 26 U.S.C. § 4705(a) were dismissed prior to trial. Appellant was sentenced to five years on each count, the sentences to run concurrently.

In September, 1968, Moran, an undercover informant of the Federal Bureau of Narcotics, met appellant's co-defendant, Marron, when informant and others went to Marron's residence to purchase heroin. At this meeting, Marron was unable to furnish the narcotic because, as he said, his main connection was out of town. Arrangements were made at that time for a heroin sale on October 2nd. On that day, Agent Coonce of the bureau met with the informant and furnished him with $100.00 to purchase heroin. The informant, under surveillance, went to Marron's residence. Marron drove the informant to another residence, which Marron entered. He returned a few minutes later with a packet of heroin. Marron then drove the informant to the former's residence. Within a few minutes, the informant left Marron's home and provided Agent Coonce with one-half ounce of heroin, which, the informant stated, he had purchased from Marron. Later, on October 7th, the informant met with Agents Coonce and Barnes. The informant was again provided with $100.00 to purchase heroin. Again, he proceeded to Marron's residence. The informant and Marron then entered the residence and after about 20 minutes, the informant left and forthwith provided Agent Coonce with a quarter ounce of heroin, which, he said, he had purchased from Marron. On October 8th, the informant again met with Agent Barnes, at which time informant received $200.00 in marked currency. The informant was driven to Marron's residence. From there, Marron drove the informant to 3015 Darwin Street. Upon arrival, Marron entered the residence and returned a few minutes later with a packet of heroin. They then drove to Marron's residence. Within a few minutes, the informant left and delivered to Agent Barnes one ounce of heroin which, he said, he had purchased from Marron. Two days later, informant again met with Agent Coonce, who again gave informant $200.00 in bills, the serial numbers of which had been previously recorded, the bills having been dusted with a fluorescent orange powder. Informant met Marron at the latter's residence and then drove to the same address on Darwin Street. Upon arrival, Marron entered the residence and returned in a few minutes with a packet of heroin. They then left what turned out to be the appellant's residence in Marron's automobile. After driving about a block, informant gave the surveillance agents a hand signal, the vehicle was stopped and Marron was arrested. At that time, informant provided Agent Barnes with one ounce of heroin, which he said he had purchased from co-defendant Marron. Agents Coonce and Barnes entered the residence on Darwin Street and informed appellant that they were federal agents and were there to execute a search warrant. After admitting the agents, appellant stated that it was his home, or words to that effect. The agents then proceeded to search the home. In a chest of drawers in the living room, Barnes found the $200.00 in marked currency which Coonce had given the informant earlier in the evening. On the sidewalk, immediately outside the rear entrance to the residence, Agent Barnes found a glass olive bottle filled with seven rubber contraceptives containing heroin. When subjected to an ultra-violet lamp, the glass bottle revealed traces of fluorescent orange powder, similar to the powder which Agent Coonce had placed on the bills prior to giving them to informant earlier that evening. The agents then subjected the hands of all four men in the residence to an ultra-violet ray lamp test. Only the hands of appellant revealed traces of the fluorescent powder. Appellant was then placed under

arrest. After arrest, $100.00, a part of the marked money which Barnes had given informant to purchase heroin on October 8th, was found in appellant's shirt pocket. In appellant's wallet was a Greyhound bus bill which read: "Shipper, P. L. Camacho, 3015 North Darwin." At the trial, appellant denied that he sold narcotics to Marron or that he resided at 3015 Darwin Street, but did admit that he had in the past used the name Camacho.

■ At the outset, we hold that there was ample evidence to find the residence located at 3015 Darwin Street was the home of appellant. Beyond doubt, this residence was the fountainhead of Marron's narcotic supply. Appellant told Agents Coonce and Barnes that the residence was his. While denying this statement on the witness stand, he readily admitted that he used the name Camacho, the surname found on the Greyhound bus bill giving the shipper's address as 3015 Darwin. The jury, in its analysis of the evidence, had a right to weigh the testimony of the agents against that of the appellant and Marron. Obviously, they accepted the testimony of the officers and the physical evidence.

■■ Appellant claims it was error for the court to admit exhibits 3, 4, 5, 6 and 7. Exhibits 3, 4 and 5 are packets of heroin. Exhibit 6 is part of the marked money, dusted with fluorescent orange powder, which informant gave Marron on October 10, 1968. Exhibit 7 is the glass bottle containing heroin which Agent Barnes found at the rear entrance to the residence. Keep in mind that the marked bills, exhibit 8, which were used to purchase the heroin contained in exhibits 3 and 4, were found in appellant's shirt pocket and that the bills, exhibit 6, which were used to purchase the heroin contained in exhibit 5, were found in the chest of drawers in the appellant's residence. Keep also in mind that a glass bottle containing heroin, covered with the telltale fluorescent orange powder, was found at the rear entrance of appellant's residence, this

being the same type of fluorescent powder which Agent Coonce had placed on the bills, exhibit 6, and the further fact that of the four men present at appellant's residence at the time of the arrest, only the hands of the appellant revealed fluorescent powder. In this factual environment, we have no difficulty in holding that each of the exhibits was properly admitted in evidence. Only on the admission into evidence of the bottle is there a possibility of room for argument. It is argued that the agent who placed the fluorescent powder on the bills is the one who found the bottle and it was the powder from his hands, rather than from the hands of appellant, which was present on the bottle. This was a jury question. Even if we were to hold that the admission of the bottle was error, which we do not, the evidence of appellant's guilt is so overwhelming, that we would find the error harmless under Rule 52(a), F.R.Crim.P.

■■ Appellant's claim that there is no evidence that he had possession of the heroin is clearly without substance. Possession may be actual or constructive, and constructive possession is sufficient to sustain a conviction. Here, the possession of part of the marked money by the appellant and the presence of the fluorescent powder on his hands is without question circumstantial evidence of both actual and constructive possession of the heroin. The same can be said of the presence of the marked money in the drawer of the residence occupied by appellant. Dominion and control over the heroin, even without physical custody, is sufficient to invoke the doctrine of constructive possession. Moody v. United States, 376 F.2d 525, 529 (9th Cir. 1967); Arellanes v. United States, 302 F.2d 603 (9th Cir. 1962), cert. denied 371 U.S. 930, 83 S.Ct. 294, 9 L.Ed.2d 238; Rodella v. United States, 286 F.2d 306 (9th Cir. 1960). The jury has resolved the issue of possession against the appellant. Hernandez v. United States, 300 F.2d 114 (9th Cir. 1962), on which appellant relies, aside from being a narcotics case, has little

resemblance to ours. Simply stated, there was no evidence in *Hernandez* of either actual or constructive possession of the heroin.

In our analysis of the sufficiency of the evidence, after verdict, we are guided by the rule that the evidence must be viewed in the light most favorable to the government. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Moody v. United States, *supra*; Mott v. United States, 387 F.2d 610, 612 (9th Cir. 1967); White v. United States, 394 F.2d 49, 51 (9th Cir. 1968).

■ We shall now consider appellant's claim that prejudicial error was committed by the prosecutor in making a statement in the presence of, and another in his argument, to the jury.

Immediately prior to the government resting its case, the judge inquired if there was anything else to admit in evidence. The prosecutor replied that he had a "prior similar act", but did not indicate whether it should be admitted against appellant or the co-defendant Marron. The judge, on the objection of appellant's counsel, forthwith instructed the jury to disregard the statement.[1]

■ Later, in his argument to the jury, the prosecutor made a statement implying that appellant, by reason of a certain stipulation, admitted that he had knowledge of the existence of the heroin. The statement was improper and the judge immediately instructed the jury to disregard the remarks.[2] Moreover, prior to argument, the court instructed the jury that the arguments of the attorneys were not evidence.[3]

In these circumstances, we feel that the prosecutor's remarks were irregularities which did not affect the substantial rights of the appellant under Rule 52(a), F.R.Crim.P., and that the judge's prompt instructions eliminated any possible prejudicial error. Az Din v. United States, 232 F.2d 283, 285–286 (9th Cir. 1956). Our whole jury system is based upon the ability of a jury to follow instructions. Opper v. United States, 348 U.S. 84, 95, 75 S.Ct. 158, 99 L.Ed. 101, 45 A.L.R.2d 1308 (1954), and we must assume that the jury followed the instructions. Cook v. United States, 354 F.2d 529 (9th Cir. 1965); Shotwell Mfg. Co. v. United States, 371 U.S. 341, 83 S. Ct. 448, 9 L.Ed.2d 357 (1963); Fineberg v. United States, 393 F.2d 417 (9th Cir. 1968). Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) is not controlling on the facts before us.

■ Appellant next urges that the trial court's response to a juror's question resulted in undue influence being placed on the government's contention that appellant had possession of the glass bottle, exhibit 7. Appellant refers us to certain pages of the transcript, but does not argue the point. We have examined

---

1. "THE COURT: * * * All right, ladies and gentlemen, I want to first instruct you as follows. Counsel for the Government made some indefinite statement about some prior offense of some kind which was not identified, nor as to the person who might or might not have committed it.

"You are not to give it the slightest consideration. In the first place, you don't know what he is talking about. You don't know who he was mentioning, if anyone. In the second place, the Court is instructing you that you must give it absolutely no consideration whatsoever. You should wipe it entirely from your minds, and if you were to consider it you would be violating your oath in this case. * * *

"I want to be sure, do each of you understand clearly what I am saying? I wish you would give me an indication by a nod. If you don't I will go further. Is there any doubt in your mind about what I mean?" (R.T. 433–434).

2. "It [sic] is not any such stipulation, of course. It was not stipulated that they knew it was heroin." (R.T. 600).

* * * * *

"All the stipulation does is stipulate that it is heroin, that's all, not that the defendants knew it was heroin at all." (R.T. 601).

3. " * * * keep in mind that counsel are entitled to argue the case and to present their expose of the evidence. What they say is not evidence."

the entire record, including the pages to which counsel has directed our attention, and find that the judge's comments did not, in any way, convey to the jury the trial judge's impressions or personal feelings on the guilt or innocence of the appellant. Nor was there any misstatement of the evidence by the judge. Moreover, appellant did not object or except to the court's supplemental instruction. This he was required to do under Rule 30, F.R.Crim.P. Additionally, the alleged irregularity, if one existed, was harmless within the meaning of Rule 52 (a), F.R.Crim.P.

Appellant's assault on the constitutionality of the presumption feature of the statute under which he was convicted has been answered adversely to his contentions in the recent case of Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970).

Affirmed.