UNITED STATES of America,
Plaintiff-Appellee,

v.

Danilo Bautista BATIMANA and Jose
Edgardo Noguera,
Defendants-Appellants.

No. 79–1269, 79–1270.

United States Court of Appeals,
Ninth Circuit.

Submitted Dec. 5, 1979.

Decided July 22, 1980.

Mark E. Kalmansohn, Los Angeles, Cal., for plaintiff-appellee.

Before WRIGHT, HUG, and FLETCHER, Circuit Judges.

HUG, Circuit Judge:

Appellants, Batimana and Noguera, and a third defendant, Samuel Nicanor,[1] were convicted by a jury of conspiring to import and possess with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1), 846, 952(a), 960(a)(1), and 963 (Count One), and possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1) (Count Two). Each was placed on probation for five years. Appellants contend that there was insufficient evidence to support their convictions.

Nicanor and a man named Virgilio Delin had arranged to have Edgardo Lavadia bring 500 grams of heroin from the Philippines for delivery to Nicanor in Los Angeles. Unbeknownst to Nicanor and Delin, Lavadia had been arrested by Philippine police, and had agreed to cooperate in identifying his associates.

Accompanied by Philippine and American narcotics officers, Lavadia flew to Los Angeles with the heroin on October 2, 1978. Nicanor met him at the airport with appellants. Appellants followed Nicanor and Lavadia from the boarding area to the baggage area, waited outside the baggage area for 45 minutes, and then drove to the Marriott Hotel in one car, while Nicanor and Lavadia drove in another. The four men met in the lobby and proceeded to one of the hotel rooms. The heroin was later delivered to the room and shortly thereafter Nicanor, Batimana and Noguera were arrested.

I.

A. *Sufficiency of the Evidence*

■ Appellants contend that there was insufficient evidence to sustain their con-

Arthur Mabry, Victor B. Kenton, Los Angeles, Cal., for defendants-appellants.

1. Nicanor has not appealed his conviction.

spiracy convictions. Appellants do not dispute the existence of a conspiracy; rather, they contend their connection to the conspiracy was not established. Viewing the evidence in the light most favorable to the government, we will uphold a jury verdict if there was "relevant evidence from which the jury could reasonably find [the defendant] guilty beyond a reasonable doubt." *United States v. Mills*, 597 F.2d 693, 696 (9th Cir. 1979), *quoting United States v. Rojas*, 554 F.2d 938, 943 (9th Cir. 1977). A defendant's knowledge of and participation in a conspiracy may be inferred from circumstantial evidence and from evidence of the defendant's actions. *United States v. Sanchez-Murillo*, 608 F.2d 1314, 1318 (9th Cir. 1979). Acts which seem otherwise innocent, when viewed in the context of the surrounding circumstances, may justify an inference of complicity. *See United States v. Calaway*, 524 F.2d 609, 613–15 (9th Cir. 1975), *cert. denied*, 424 U.S. 967, 96 S.Ct. 1462, 47 L.Ed.2d 733 (1976). The connection of the defendant to the conspiracy need only be slight, if there is sufficient evidence to establish that connection beyond a reasonable doubt. *United States v. Dunn*, 564 F.2d 348, 357 (9th Cir. 1977).

■ There was substantial evidence against both appellants establishing their connection to the conspiracy. The testimony of the DEA agents indicated that appellants were acting as lookouts at the airport and also at the hotel. *See United States v. Perez*, 491 F.2d 167, 171 (9th Cir.), *cert. denied*, 419 U.S. 858, 95 S.Ct. 106, 42 L.Ed.2d 92 (1974). Lavadia's testimony that Nicanor told him at the airport to give the heroin to Batimana and Noguera was evidence of appellants' connection to the conspiracy. Lavadia also testified that Nicanor stated in the hotel room that Batimana and Noguera would sell 20 ounces of the heroin the next day, and that appellants heard this statement and did not refute it, which further indicated appellants' involvement in the conspiracy.

The evidence showed that Nicanor had given Batimana's phone number to Lavadia

to use to contact Nicanor in Los Angeles. Lavadia also testified that when he arrived at the airport Batimana asked Lavadia if he was "Tom," the alias Lavadia had used in his drug transactions. There was evidence that in the hotel room Batimana had put his hand in the bag to taste the heroin. After the heroin was delivered to the room, Noguera went over and placed the chain lock on the door, and then went over to look at the heroin. Besides the verbal evidence, the jury viewed a videotape of what had taken place in the hotel room. The incredibility of appellants' own testimony as to their reasons for waiting at the airport and going to the hotel room with Nicanor also may be considered in determining their involvement. *See United States v. Martinez*, 514 F.2d 334, 341 (9th Cir. 1975).

We conclude that this evidence, viewed in its entirety, was ample to support the jury's finding.

### B. *Admissibility of Out-of-Court Statements*

Appellants contend that Lavadia's testimony about Nicanor's request that Lavadia give the heroin to appellants at the airport and the testimony about the statement of Nicanor in the hotel room that appellants would sell 20 ounces of heroin the next day were inadmissible hearsay. We note that no objection was made at trial to admission of the testimony and thus the admission of the testimony could be considered on appeal only if found to be plain error. Because we find the statements were admissible evidence, we need not be concerned with the plain error doctrine.

■ The test for admissibility of out-of-court statements of a co-conspirator is whether there is sufficient, substantial evidence apart from the statements which establishes a prima facie case of the conspiracy and the defendant's slight connection to the conspiracy. *United States v. Weiner*, 578 F.2d 757, 768–69 (9th Cir.), *cert. denied*, 439 U.S. 981, 99 S.Ct. 568, 58 L.Ed.2d 651 (1978). Again, appellants do not challenge

the existence of a conspiracy, but rather their connection to it.

It is clear in this circuit that the statements may be admitted provisionally subject to later motions to strike, *see United States v. Vargas-Rios*, 607 F.2d 831, 836–37 (9th Cir. 1979); we can therefore consider all of the evidence independent of the out-of-court statements regardless of the order of proof. We conclude that the evidence discussed above, excluding the challenged statements, was sufficient to meet the prima facie showing. The statements were thus admissible under Fed.R.Evid. 801(d)(2)(E).

Furthermore, Nicanor's statement that Batimana and Noguera would sell 20 ounces of heroin the next day, made in appellants' presence, was admissible as an adoptive admission. *See* Fed.R.Evid. 801(d)(2)(B); *United States v. Hoosier*, 542 F.2d 687 (6th Cir. 1976). In any event the statement was admissible against Nicanor bearing on his role in the conspiracy, with no objection by appellants on grounds of prejudice under Fed.R.Evid. 403 or any request for limiting instruction. Nicanor's directive at the airport that Lavadia should give the heroin to appellants similarly was clearly admissible against Nicanor with no objection under Fed.R.Evid. 403 and no request for a limiting instruction.

## II.

Appellants also assert that the evidence was insufficient to sustain their convictions for possession of heroin. The government responds that they were "minimally" in control of the drugs. We disagree.

Possession of a controlled substance may be actual or constructive. *United States v. Grayson*, 597 F.2d 1225, 1229 (9th Cir.), *cert. denied*, 444 U.S. 875, 100 S.Ct. 157, 62 L.Ed.2d 102 (1979). Actual possession connotes physical custody or actual personal dominion. *Cf. United States v. Amaro*, 422 F.2d 1078, 1080 (9th Cir. 1970) ("physical custody").

The record is devoid of evidence that appellants had actual possession of the heroin. A DEA agent delivered the drugs to Lavadia. Agents entered the hotel room to effect arrests minutes after delivery. During that brief time, Noguera did not touch the package. Testimony that Batimana "tried" to place his hand inside the bag is insufficient to establish physical custody. Neither appellant had personal possession of the package.

Constructive possession has been defined as " 'dominion and control . . . so as to give power of disposal of the drug.' " *Arellanes v. United States*, 302 F.2d 603, 606 (9th Cir.), *cert. denied*, 371 U.S. 930, 83 S.Ct. 294, 9 L.Ed.2d 238 (1962). Mere proximity to the drug, mere presence, or mere association with the person who does control the drug is insufficient to support a finding of possession. *Id.*

There is no evidence that appellants asserted dominion and control over the heroin. Indeed, the limited time span negates such an argument. Lavadia took possession of the package upon delivery. Appellants were not included in the subsequent conversation between Lavadia and Nicanor. Viewing the contents of the drug package does not indicate the requisite ability " 'to assure [its] production, without difficulty, to a customer.' " *United States v. Barnett*, 468 F.2d 1153, 1155 (9th Cir. 1972).

As an alternative ground for affirmance, the government argues that the evidence was sufficient to support conviction on the theory that appellants aided and abetted Nicanor in his possession of the heroin. The jury was instructed on the aiding and abetting theory.[2]

In order to aid and abet another to commit a crime, it is necessary that a

---

**2.** Parenthetically, we note that no instruction was requested or given under the authority of

*Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). In that case,

defendant "in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seeks by his action to make it succeed." L. Hand, J., in *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir. 1938). *See United States v. Weaver*, 594 F.2d 1272, 1275 (9th Cir. 1979). Even though a conspiracy may exist, independent proof may justify a charge on aiding and abetting. *See Nye & Nissen v. United States*, 336 U.S. 613, 619–20, 69 S.Ct. 766, 769–770, 93 L.Ed. 919 (1949).[3]

Assuming Nicanor could be found to be in possession, there was insufficient evidence that Batimana and Noguera did anything to effect that crime. Although appellants were present at the scene, mere presence does not make one an aider and abettor. *United States v. Camacho*, 528 F.2d 464 (9th Cir.), *cert. denied*, 425 U.S. 995, 96 S.Ct. 2208, 48 L.Ed.2d 819 (1976). Further, there was no showing they assisted the perpetrator. *Cf. United States v. Groomer*, 596 F.2d 356, 358 (9th Cir. 1979) (defendant was present and assisted in unloading bags containing contraband with knowledge of contents).

The government relies on Noguera's act of chaining the hotel room door after the drugs had been delivered. This ambiguous act is insufficient to satisfy the participation requirements for aiding and abetting the possession of heroin.

The convictions on Count I for conspiracy to import and possess are affirmed. The convictions on Count II for possession are reversed.

### III.

Having affirmed the conviction for conspiracy and reversed the conviction for pos-

session, we consider the effect of our decision upon the grant of probation. The district court suspended imposition of sentence on both counts of the indictment and placed each appellant on probation for a period of five years.

■ The well-established rule is that the conspiracy to do an act and the completed substantive offense are separate crimes for which separate sentences can be imposed. *See Iannelli v. United States*, 420 U.S. 770, 777–78, 95 S.Ct. 1284, 1289–90, 43 L.Ed.2d 616 (1975); *Hill v. United States*, 306 F.2d 245, 247 (9th Cir. 1962). There is nothing in the legislative history of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §§ 801–966, the provisions under which the appellants were convicted, which suggests a departure from this general rule. *See Curtis v. United States*, 546 F.2d 1188, 1190 (5th Cir.), *cert. denied*, 431 U.S. 908, 97 S.Ct. 1705, 52 L.Ed.2d 393 (1977).

The district court could have sentenced appellants separately for each conviction. Instead, the court placed appellants on five years' probation. This court has on several occasions expressed disapproval of the failure of the district court to impose separate sentences for each count of a multiple count indictment. *See Lee v. United States*, 400 F.2d 185, 187 (9th Cir. 1968); *Ray v. United States*, 372 F.2d 80, 83 (9th Cir. 1967); *McDowell v. Swope*, 183 F.2d 856, 858 (9th Cir. 1950). Such a sentence will be upheld, however, if the conviction is sustainable on any count of the indictment, and the general sentence does not exceed the maximum sentence that could have been imposed on that count. *See Ray v. United States*, 372

---

the Court held that a conspirator may be convicted of a substantive offense committed by a co-conspirator in furtherance of the conspiracy and as a part thereof.

The instant case was not submitted to the jury under *Pinkerton*, but only on the aiding and abetting theory. Thus, we confine our ruling to the correctness of the aiding and abetting charge and the sufficiency of the evidence to support conviction on that theory. *See Nye*

*& Nissen v. United States*, 336 U.S. 613, 618, 69 S.Ct. 766, 769, 93 L.Ed. 919 (1949).

**3.** It is well-settled that courts may instruct on aiding and abetting, if the evidence warrants, even though this theory was not charged in the indictment. *See United States v. Roselli*, 432 F.2d 879, 895 n.27 (9th Cir. 1970), *cert. denied*, 401 U.S. 924, 91 S.Ct. 883, 27 L.Ed.2d 828 (1971).

F.2d at 82; 2 C. Wright, Federal Practice & Procedure, § 527 at 414–20.

 We see no reason why the principle behind this general sentence doctrine should not apply by analogy to the present case, where the district court imposed a general probationary term based on multiple convictions. We note that a five-year probationary term could have been imposed on the basis of the conspiracy conviction alone, 18 U.S.C. § 3651 (1976), and that the general grant of probation may be sustained on that basis. The grants of the five-year probationary terms are therefore affirmed.

AFFIRMED in part and REVERSED in part.

---

FLETCHER, Circuit Judge, concurring:

I concur in the court's result in all respects. I concur with the reasoning in parts I and III of the opinion. As for part II, I agree that neither Batimana's nor Noguera's participation rose to a level that would make them aiders and abettors. Even if their participation had reached that level, however, accessorial liability, like other theories of vicarious liability, requires a guilty principal. The only person who could have committed the crime of possession was Nicanor. The evidence in this case was insufficient to establish that Nicanor was guilty of possession.

This case presents a "controlled delivery" situation in which Lavadia was under close police direction from the time he purchased the heroin through the time he handed it over to Nicanor. Although Nicanor might have actually been physically holding the heroin at the time of his arrest, it does not establish that he was in either actual or constructive possession of the drugs. The defendant must be able to exercise "dominion and control" over the contraband in order to establish actual or constructive possession. *Arellanes v. United States,* 302 F.2d 603 (9th Cir.), *cert. denied,* 371 U.S. 930, 83 S.Ct. 294, 9 L.Ed.2d 238 (1962). This transaction was so tightly controlled by the police that Nicanor never had power to control the disposition of the drugs in any way.[1] In such a circumstance, and despite the fact that he had the drugs in his physical possession, it cannot be said that he had possession of the drugs for purposes of section 841.[2] Because the evidence was insufficient to convict Nicanor of possession, it is necessarily insufficient to support the convictions of Batimana and Noguera.

---

1. This conclusion is not altered by the possibility that Nicanor might have subjectively believed that he had dominion over the heroin. If he did not in fact have such dominion, he did not violate the statute. His belief to the contrary is a classic example of legal impossibility—the defendant thinks his actions are illegal, but in fact they are not.

2. The Tenth and Second Circuits have held, in cases presenting the "controlled delivery" fact pattern, that shipments of contraband accomplished under government auspices never left the "dominion and control" of the authorities, and that subsequent warrantless seizures of the contraband were thus not subject to the fourth amendment. *United States v. Andrews,* 618 F.2d 646, 653–54 (10th Cir. 1980); *United States v. Ford,* 525 F.2d 1308, 1312 (10th Cir. 1975); *United States v. DeBerry,* 487 F.2d 448, 450–51 (2d Cir. 1973). Paradoxically, the defendants in these cases were convicted of crimes of possession, despite the fact that the government had "dominion and control" of the contraband.