**Robert Joseph CASTILLON, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 17431.**

United States Court of Appeals
Ninth Circuit.

Jan. 16, 1962.

James Follis, San Francisco, Cal., for appellant.

Cecil F. Poole, U. S. Atty., San Francisco, Cal., Peter R. Goldschmidt, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before HAMLEY, HAMLIN and DUNIWAY, Circuit Judges.

HAMLIN, Circuit Judge.

Appellant was indicted by a federal grand jury for concealing narcotics in violation of 21 U.S.C.A. §§ 174 and 176a.[1] Jury trial having been waived, appellant was tried, convicted, and sentenced to imprisonment in a federal penitentiary by the United States District Court for the Northern District of California, Southern Division. Prior to trial appellant made a timely motion, pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., to suppress evidence obtained in a search made incident to his arrest. No arrest or search warrants having been issued, appellant contended that the search was unreasonable and in violation of the Fourth Amendment to the United States Constitution, because the search was made incident to an illegal arrest. It was contended that the arrest was illegal because no warrant was issued and the arresting narcotics agents had no probable cause or reasonable grounds to believe that appellant had committed or was committing a violation of the narcotic laws. The motion to suppress the evidence was denied. The motion was renewed at the trial before a different district judge and the evidence was duly objected to when introduced. The trial judge denied the motion and overruled the objection on the ground that the issues had already been determined by another judge in a prior proceeding especially set for that purpose. This court has jurisdiction of the appeal from the conviction under the provisions of 28 U.S.C.A. § 1291.

An arrest without a warrant may be legally made where the arresting officer has "probable cause" within the meaning of the Fourth Amendment or "reasonable grounds" within the meaning of 26 U.S.C.A. § 7607 to believe that the arrested person had committed or was committing a violation of the narcotic laws.[2]

---

1. Title 21 U.S.C.A. § 174 reads in pertinent part:

"Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States * * *, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or conspires to commit any of such acts in violation of the laws of the United States, shall be imprisoned not less than five or more than twenty years and, in addition, may be fined not more than $20,000.

Title 21 U.S.C.A. § 176a reads in pertinent part:

"Notwithstanding any other provision of law, whoever, knowingly, with intent to defraud the United States, imports or brings into the United States marihuana contrary to law, or smuggles or clandestinely introduces into the United States marihuana which should have been invoiced, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such marihuana after being imported or

brought in, knowing the same to have been imported or brought into the United States contrary to law, or whoever conspires to do any of the foregoing acts, shall be imprisoned not less than five or more than twenty years and, in addition, may be fined not more than $20,000.

2. See, e. g., Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1958) and Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1924).

Title 26 U.S.C.A. § 7607 reads in pertinent part:

"The * * * agents of the Bureau of Narcotics of the Department of the Treasury, and officers of the customs * * *, may—

*     *     *     *     *

"(2) make arrests without warrant for violations of any law of the United States relating to narcotic drugs * * * or marihuana * * * where the violation is committed in the presence of the person making the arrest or where such person has reasonable grounds to believe that the person to be arrested has committed or is committing such violation."

The facts surrounding the arrest of the appellant and the incidental search which revealed narcotics are contained in the testimony of the federal agent, Wilkins, who was the sole witness at the hearing on the motion to suppress the evidence. The government contends that Wilkins' testimony establishes that he had probable cause or reasonable grounds to believe that appellant had committed or was committing a violation of the narcotic laws and that therefore his arrest of appellant without a warrant was legal.[3]

Wilkins' testimony shows that on the evening of March 13, 1961, shortly after 10 p. m., narcotics agents arrested one O'Rourke for narcotics violations. Purchases of narcotics through a government special employee named Gilman had previously been made from O'Rourke on the 9th, 10th and 13th of March. When arrested O'Rourke was asked if he had any narcotics in the house. He was told that the house would be searched and that it would be better to surrender the narcotics rather than have the whole place torn up as a result of the search. O'Rourke surrendered the narcotics which were in the house. O'Rourke was then asked if he had narcotics elsewhere, and he replied that he and his partner had narcotics in an apartment on Page Street in San Francisco. He produced a key.[4] O'Rourke went with some agents to the Page Street apartment and disclosed the narcotics which were there. O'Rourke was then brought back to his own apartment where he was questioned further concerning the persons to whom

he had sold narcotics. He said that he had only two customers—Gilman, the special agent, and Robert Castillon.[5] O'Rourke stated that he had sold an ounce of heroin to Castillon on the morning of March 13. He told the agents where Castillon lived, describing the place as having a locked iron gate which barred the entrance to Castillon's second floor apartment.

The agents did not know O'Rourke and had not received information of any kind from him before his arrest.

On the basis of the information obtained from O'Rourke on the evening of the 13th of March the agents went to Castillon's apartment shortly after midnight.[6] A key to the iron gate was obtained from another of the building's tenants who had been asked whether Robert Castillon lived there. The agents proceeded to Castillon's apartment. As they arrived one of the occupants of the apartment opened the door. Wilkins saw the appellant inside the apartment and asked him if he was Robert Castillon; upon receiving an affirmative reply he identified himself as a federal narcotics agent, rushed in and placed appellant under arrest. The agent had never seen Castillon before. In the apartment at that time with appellant was his wife and another woman. When arrested appellant had a shoebox in his hand which was taken from him. The agent had no idea at that time what was in the shoebox, but later examination established that it contained narcotics. The narcotics so seized were the basis for the indictment and conviction of appellant.

The terms "probable cause" as used in the *Fourth Amendment* and the "reasonable grounds" as used in section 104 (a) of the Narcotics Control Act, 26 U.S. C.A. § 7607, are substantial equivalents of the same meaning. United States v. Walker, 246 F.2d 519 (7th Cir. 1957). Cf. Draper v. United States, 358 U.S. 307, 310, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959) and United States v. Bianco, 189 F.2d 716 (3rd Cir. 1951).

3. At the hearing on the motion to suppress the evidence the government conceded that there was no consent to the entry into appellant's apartment; thus, the

government relies solely on the proposition that the agents had probable cause to arrest the appellant without a warrant.

4. The agents knew of the Page Street apartment and had previously followed O'Rourke to that address.

5. Wilkins testified that Gilman had told him earlier that O'Rourke had stated that he had a customer of Mexican ancestry named Bob.

6. Wilkins testified: "I went there on the basis of the fact that he [O'Rourke] told

■■ Probable cause can be founded upon information received from a reliable informer.[7] However, the appellant contends that there was no probable cause in this case, because the testimony of agent Wilkins is insufficient to show that O'Rourke was a reliable informer.

This court had occasion to consider contentions similar to those made by the appellant in Rodgers v. United States, 267 F.2d 79 (9th Cir. 1959). The court there said:

"While it is, of course, true that the existence of reasonable grounds to arrest without a warrant will turn upon all the facts of each individual case, it is nevertheless possible to draw certain conclusions from the cases relating to this subject. The courts have no trouble in finding reasonable cause where the arresting officer has personal knowledge leading him to believe that a crime has been committed, whether from his own observation and knowledge or where the search is incident to a customs inspection. However, where the arresting agents rely on an informer the question becomes more difficult. When the information from the informer is combined with the arresting officer's personal knowledge and observation of the defendant, or where the arresting officer, though without personal knowledge or observation, knows or has reasonable grounds to believe that an informer is reliable, the courts have found that there was reasonable grounds on which to make a valid arrest. However, where the officer makes an arrest without any knowledge of the commission of a crime except from an informer whom he does not know to be reliable, the courts have consistently held there is no reasonable

grounds for the arrest." [Footnotes omitted.] [8]

In Rodgers the agents received from a companion of the arrested person a plethora of detailed information which proved to be accurate upon being checked out before the arrest was made. However, the facts and circumstances in Rodgers do not support the arrest in the instant case. In this case the arresting agent had no knowledge of the informer, O'Rourke, before the evening on which he was arrested. The agent had never previously received any information from O'Rourke, and prior to the night of his arrest had no reasonable grounds to believe that he was a reliable informer. Furthermore, the information received from O'Rourke which checked out to be true, namely the description of appellant's residence and the existence of a further cache of narcotics on Page Street, is not nearly as extensive as that received in Rodgers.

We think the facts of this case more nearly resemble those in Wong Sun v. United States, 288 F.2d 366 (9th Cir. 1961). In Wong Sun the arrests of two persons, James Wah Toy and Wong Sun, were held illegal for lack of probable cause or reasonable grounds to believe that they had committed or were committing violations of the narcotic laws. Officers had gone to the home of Toy solely on the basis of a statement by one Hom Way, who had been arrested a few hours before, that he had purchased narcotics from Toy. Although there was testimony by the agent that he had known Hom Way for six weeks, there was no evidence that Hom Way had ever given any reliable information or that the agent knew him to be reliable. When the agents arrived at Toy's residence—a laundry—early in the morning they were told that he would not be open for business until later. The agents identified

us that he had sold narcotics on that morning and that Castillon was one of his regular customers."

7. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); Rodgers v. United States, 267 F.2d 79 (9th Cir. 1959).

8. 267 F.2d at 85.

themselves and Toy closed the door and ran back to his room. The agents broke in and arrested Toy. The arrest was held illegal.

When Toy was arrested he denied ever selling any narcotics but said that he knew of someone who had whose name was Johnnie. After describing Johnnie's house and its whereabouts, Toy said that he had been there the previous evening. He also described how much "stuff" Johnnie had. The agents went to Johnnie's house and arrested him. He then told them that Toy and a person called "Sea Dog" had brought narcotics to his house. Johnnie didn't know "Sea Dog's" true name or where he lived. With this information the agents returned to Toy and found out that "Sea Dog" was Wong Sun who resided in an apartment on Franklin Street in San Francisco. Toy then accompanied the agents in a car pointing out Wong Sun's residence. After identifying themselves as narcotics agents they were admitted, went upstairs to a room where Wong Sun was sleeping, and arrested him. Wong Sun's arrest was held illegal.

We see no material distinctions between the facts surrounding the arrests of Toy and Wong Sun and those surrounding the arrest of the appellant in this case. In each case information about the defendants was received from a recently arrested person or persons (in the case of Wong Sun) who had never before given reliable information or who had no reputation for being reliable. In each case the informer had described the arrested person's residence, and in the case of Wong Sun the agents were taken there by the informer, Toy.

On the basis of the Wong Sun case we hold that there was not sufficient evidence to show that O'Rourke was reliable and that there was neither probable cause nor reasonable grounds for the agents to believe that the appellant had committed or was committing a violation of the narcotic laws.[9]

The search which produced the evidence of marijuana and heroin used in the trial below was incident to an illegal arrest in violation of the Fourth Amendment of the United States Constitution.

The judgment of conviction is reversed.

9. The Supreme Court has recognized that there may be a difference between the probable cause which is necessary to make an arrest without a warrant legal and the probable cause which is necessary to justify the issuance of a warrant by a magistrate. Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436 (1947). If the grounds for probable cause for an arrest without a warrant were always the same as the grounds for issuance of a warrant by a disinterested magistrate the protection intended by the Fourth Amendment in requiring warrants would be non-existent.

We are not called upon to decide whether the facts of this case are sufficient to have justified the issuance of a warrant by a magistrate, and, of course, we make no such decision. However, in Jones v. United States, 362 U.S. 257, 270-271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1959), the Supreme Court said:

"In a doubtful case, when the officer does not have clearly convincing evidence of the immediate need to search, it is most important that resort be had to a warrant, so that the evidence in the possession of the police may be weighed by an independent judicial officer, whose decision, not that of the police, may govern whether liberty or privacy is to be invaded."

The government has failed to supply any good reason why an application for a warrant was not made in the instant case.