**Alfredo Delgado ARELLANES, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 19949.**

United States Court of Appeals
Ninth Circuit.

Nov. 1, 1965.

Rehearing Denied Jan. 3, 1966.

Hamley, Circuit Judge, dissented.

Garrett P. Graham, San Francisco, Cal., for appellant.

Cecil F. Poole, U. S. Atty., Jerrold M. Ladar, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before CHAMBERS, Circuit Judge, MADDEN, Judge of the Court of Claims, and HAMLEY, Circuit Judge.

MADDEN, Judge:

This is an appeal from the denial by the United States District Court for the Northern District of California of the appellant's motion to vacate sentences. The motion was made pursuant to Section 2255 of Title 28, United States Code. The sentences complained of were imposed by the District Court after the conviction of the appellant for violation of the Jones-Miller Narcotics Act, 21 U.S.C. §§ 174, 176a; 26 U.S.C. § 7237(d). The conviction was appealed and was affirmed by this court, 302 F.2d 603, on April 23, 1962. On March 18, 1963, the appellant filed the instant motion under 28 U.S.C. § 2255. The District Court denied the motion and the appellant appealed. This court reversed the order

denying the motion, and directed the District Court to hold an evidentiary hearing to determine the facts relevant to the appellant's motion, 326 F.2d 560. Such a hearing was held. The appellant was represented by appointed counsel and both the appellant and the Government presented oral testimony and documentary evidence.

Section 2255 requires, in paragraph· 3, that the District Court make findings of fact and state conclusions of law when it holds an evidentiary hearing pursuant to that section. Federal Rule of Civil Procedure No. 52(a) provides:

> In all actions tried upon the facts without a jury * * * the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment; * * * Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

Rule 52(a) also provides that if the trial court files an opinion "it will be sufficient if the findings of fact and conclusions of law appear therein" without their being separately stated and numbered.

The District Court, after the evidentiary hearing on the appellant's motion, filed a twelve page order denying the motion. 238 F.Supp. 546. This order states the court's findings of fact and conclusions of law sufficiently to comply with Rule 52(a). A reading of the transcript of the hearing makes apparent that "the opportunity of the trial court to judge the credibility of the witnesses" is of more than ordinary significance in this case. The appellant, then, comes to this court with the heavy burden of persuading us that the trial judge's findings were clearly erroneous.

The essence of appellant's § 2255 motion is that he was deceived and misled, in the period between his arrest and his trial on the narcotics charges, by counsel who mulcted large sums of money from the appellant's relatives by representing to them that appellant's only possibility of escaping long prison sentences lay in providing the lawyer with money which he would use to "fix" officials who had power to be lenient with the appellant. The district judge found that the relatives got that impression from their dealings with the lawyer, and that the appellant was informed of this impression several weeks before his trial and "fully desired to encourage his lawyer to carry out the illegal scheme to help him."

The district judge found that, in the discussions between the appellant and his lawyer before the trial, the appellant "was perfectly aware of his guilt, did not believe there was any legal way to improve his situation short of becoming a government informant" and therefore desired to have his lawyer help him by the use of money for a "fix." The reference by the court to the appellant's becoming an informer concerned the possibility, reported to the appellant by his lawyer, that if the appellant would give reliable information to the Government's narcotics agents about his sources of supply and would plead guilty, the agents· would report his cooperation to the United States Attorney and the sentencing judge. The appellant considered this possibility but rejected it, apparently because it would have demeaned him or endangered him in prison and narcotics circles.

The time between appellant's arrest on March 17, 1961, and the original trial date of April 17 passed without any plans for a defense of the appellant on the merits, because neither lawyer nor client thought there was any defense. The lawyer obtained continuances setting the trial for May 15. On Sunday, May 14, the appellant urged that they get another continuance. Lawyer and counsel discussed a defense strategy. On May 15 a jury was empanelled. Appellant sought to discharge his lawyer, representing to the court that differences in defense strategy ·had developed between himself and his lawyer. A one-day continuance was granted and the court allowed the lawyer to withdraw from the case, the ap-

pellant rejecting the court's suggestion that the lawyer remain present for consultation and advice. The appellant sought to give the impression that he was aggrieved by not having another lawyer. But in fact he did not want another lawyer. He had heard in prison and elsewhere that it is an advantage in a criminal trial to represent one's self if one has no defense.

The trial court required the appellant to go to trial on May 16, and this court, in its decision on appeal from the judgment resulting from that trial, 9 Cir., 302 F.2d 603, affirmed the correctness of the trial court's action. The appellant represented himself in the trial, using the strategy which he and his lawyer had agreed on on May 14. He was intelligent and experienced in court procedure, as was shown by "his conduct of his defense at the original trial and his presence of mind under cross-examination during the § 2255 hearing."

In the trial court's order in the instant § 2255 proceeding, one paragraph is as follows:

At every step of the way petitioner attempted to deceive the court. He approved of a supposed effort to bribe the prosecution. He connived at securing continuances on specious grounds. He attempted to incite his attorney to have a false heart attack in court. He lied to the court about his reason for discharging his attorney.

█ The question for the trial court in the § 2255 hearing, and for this court in this appeal, is whether this is an appropriate case for the exercise of the court's power under § 2255, which statute is designed to serve the same purpose, in proper cases, as the extraordinary writ of habeas corpus, the Great Writ of Freedom. We think it is not an appropriate case. We think rather that it is a case for the application of the respected and useful "clean hands" doctrine. See United States v. National Wholesalers, a corporation, 236 F.2d 944 (C.A. 9).

If we were to ignore the accumulation of deceptions which the trial court found

the appellant to have engaged in and hold that he had not thereby disqualified himself from making his collateral attack upon the final judgment against him, we would examine the proceeding for disadvantages which he had suffered from the alleged misconduct and neglect of his lawyer. The only thing which he seriously urges that his lawyer did not do but should have done was to have sought to have suppressed and excluded from evidence the narcotics which he had in his possession. The trial court in the § 2255 case was mistaken in concluding that the question of the legality of the arrest of the appellant and the consequent search of his automobile and seizure of narcotics was presented to and decided by this court in the original appeal in this case. In fact these questions had not been raised before or at the original trial, nor on the appeal. This court's opinion in 302 F.2d 603 makes no mention of them.

The trial court in the § 2255 proceeding, in its order, says:

The uncontradicted testimony is that the attorney did confer with his client as to the facts and on the basis of what he was told reached the conclusion that there was no plausible defense.

That finding would cover such obvious defensive measures as the suppression or exclusion of evidence. The appellant urges that his lawyer's failure to urge that the narcotics evidence be suppressed or excluded was a gross dereliction of duty.

We will examine briefly the facts about probable cause for the arrest of the appellant. In the appellant's brief in the instant case he says:

On March 13, 1961, shortly after 10:00 p. m., narcotics agents arrested one John F. O'Rourke for narcotics violations. O'Rourke surrendered certain narcotics that were in his house. O'Rourke was then asked if he had narcotics elsewhere, and he replied that he and his partner had narcotics at an apartment at 1039 Page Street, San Francisco. O'Rourke went with some agents to

the Page Street apartment and disclosed the narcotics which were there. The narcotics agents did not know O'Rourke and had not received information of any kind from him before his arrest that evening.

We add to the above statement by the appellant the fact that O'Rourke told the agents that the apartment to which he took them, and where he disclosed the narcotics to them, was appellant's apartment. We have, then, a situation significantly different from the one presented by the case of Castillon v. United States, 9 Cir., 298 F.2d 256, in which this court held that the information given by O'Rourke to the agents about Castillon did not give them probable cause to arrest him for the violation of narcotics laws. In Castillon, O'Rourke did not have a key to Castillon's apartment, nor did he have narcotics cached there which he owned jointly with Castillon. A policeman does not necessarily show unjustified credulity when he concludes that a man who has a key to another man's apartment and knows in which dresser drawer in the apartment narcotics of which he is a joint owner are located can be trusted to know who is his partner in the narcotics business. In the appellant's case the agents, in reliance upon O'Rourke's action and statements, obtained from a United States Commissioner a warrant for the appellant's arrest. In Castillon's case no warrant was issued for his arrest.

The purpose of the preceding paragraph is to show that competent and experienced counsel, diligent in the service of a client, might reasonably have concluded, as appellant's counsel was found by the trial court in this proceeding to have concluded, that raising the probable cause issue would not benefit his client. Involving O'Rourke, who had intimate knowledge of the defendant's narcotics activities, in the trial might well have proved harmful. In fact, O'Rourke was not called by either side to be a witness at the trial.

 In the case of Linkletter v. Walker, Warden, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed. 601 (1965), the Supreme Court held that its 1961 ruling in Mapp v. Ohio, 367 U.S. 643, 81 S.C. 1684, 6 L.Ed. 2d 1081, would not be applied retroactively to make inadmissible evidence which had been obtained by an illegal search and had been admitted in a state trial which had been finally determined before the Mapp case was decided. In discussing the reasons for treating illegal searches differently from coerced confessions and some other subjects of new doctrinal announcements by the Supreme Court, with regard to retroactive application the Court, though Mr. Justice Clark, said of the purpose of the Mapp ruling:

> That purpose will not at this late date be served by the wholesale release of the guilty victims, 381 U.S. at p. 637, 85 S.Ct. at p. 1742.

Again, the Court said, with regard to the dangers to the administration of justice and the integrity of the judical process in retroactive application:

> To thus legitimate such an extraordinary procedural weapon that has no bearing on guilt would seriously disrupt the administration of justice. At pp. 637–638, 85 S.Ct. at p. 1742.

Again, the Court said:

> But there is no likelihood of unreliability or coercion present in a search and seizure case. At p. 638, 85 S.Ct. at p. 1742.[1]

We think that by justifiable analogy to the philosophy of Linkletter one who has been convicted of a crime, and his conviction has been affirmed on appeal, may not be entitled to call upon the extraordinary processes of the judicial system to extricate him, by permitting him to collaterally attack a final judgment,

---

1. See In re Lopez, 62 Cal.2d 368, 42 Cal. Rptr. 188, 398 P.2d 380 (1965) for the treatment as non-retroactive of a newly announced doctrine of the Supreme Court of California, which new doctrine had no relation to guilt or innocence.

from the plight in which his criminal conduct has placed him.

■ We decide nothing about the validity of the appellant's claim of illegality of the search or searches which produced evidence admitted, without objection, in his trial. We hold that the trial judge's finding that the appellant, an intelligent person and an experienced litigant, participated in the normal fashion of the lawyer-client relationship in the difficult task of devising a defense strategy after the appellant had rejected his lawyer's recommendation to plead guilty, furnish information and hope for leniency, is well supported by the evidence.

■ We hold, as did the trial court, that the appellant knowingly and purposefully maneuvered himself into the situation in which he would be defending himself, without counsel, he thinking that since he had no defense a lawyer could not help him and that his being without counsel might be an advantage to him. He thereby waived any right to complain that he did not have the assistance of counsel at his trial.

■ We hold, as stated earlier herein, that one who so grossly attempted to abuse and, to a considerable extent, succeeded in abusing the processes of the trial court is not eligible for the extraordinary relief which Section 2255 provides for proper cases.

The judgment of the United States District Court is affirmed.

The court wishes to express its gratitude to Mr. Garrett P. Graham, of San Francisco, for his scholarly and diligent representation of the appellant.

HAMLEY, Circuit Judge (dissenting):

The district court stated in its opinion, among other things:

> "This Court is inclined to believe that the attorney at least implied to the family, in order to induce them to put up the $3,000, that because of his special 'contacts' he could provide helpful services, albeit illegal, which would enhance the possibility that petitioner would get off with a relatively light sentence. Most likely these implications were in the form of 'puffing' the worth of his services rather than an out and out offer to participate in a conspiracy to bribe. However, it seems clear that the payment of the $3,000 was agreed to by the family in the belief that the money would be used to 'pay-off' the narcotics agent and that a 'fix' would be arranged." (238 F.Supp., at 547)

\* \* \*

> "At no time did the attorney attempt to utilize any illegal means to 'fix' the case." (238 F.Supp., at 548)

\* \* \*

> "The testimony is in sharp conflict so far as the relationship between the attorney and petitioner's family is concerned. Very likely there was misrepresentation by the attorney. However, with regard to petitioner, his testimony is that he never really believed the attorney's story regarding a bribe, that he thought this was just a means being used by the attorney to obtain a fee. In other words, petitioner was not misled by the attorney." (238 F. Supp., at 549)

In my view, the circumstances revealed in the quoted portion of the district court opinion and as related in the majority opinion demonstrate that appellant did not have adequate representation by counsel at his trial.

Where such representation is inadequate because tainted with grossly improper conduct I perceive no room for applying a "clean hands" doctrine for the purpose of letting the judgment stand. "Clean hands" is a doctrine of the law of equity; here we are dealing with constitutional rights in a federal criminal prosecution. Very few defendants come into federal criminal courts with clean hands. The Sixth Amendment is available to all defendants.

With due deference, I feel that whenever federal judicial processes, including

the conduct of attorneys as officers of the court, have been, as here, contaminated by fraud, the integrity of the system can be vindicated only by starting over. I would reverse.